```
              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :
                             :
         vs.                 :   No. 4:CR-01-366
                             :
KURT FIGARO                  :   (Judge Muir)
```

ORDER

June 21, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On May 23, 2002, a second superseding indictment consisting of three counts was returned charging Ralston Smith, Kayon Chambers and Kurt Figaro with conspiracy to distribute controlled substances (Count 1), possession with intent to distribute or distribution of controlled substances (Count 2) and conspiracy to commit money laundering (Count 3). Chambers and Smith entered guilty pleas to Count 1 of the second superseding indictment. On September 4, 2002, Figaro was found guilty by a jury of the charges set forth in the second superseding indictment. Specifically, the jury found Figaro guilty of the following offenses:

(1) Conspiracy to Distribute controlled substances;

(2) Possession with Intent to Distribute in Excess of 50 Grams of Cocaine Base and Aiding and Abetting; and

(3) Conspiracy to Commit Money Laundering.

In this case we used special verdict interrogatories. The jury in answering those special verdict interrogatories found beyond a reasonable doubt that the amount of cocaine base (crack cocaine) involved in the offenses was at least 50 grams.

A presentence report and addendum thereto were prepared and submitted to the court on November 27, 2002.  Probation Officer Drew Thompson determined that the total offense level was 46, the criminal history category was III and the guideline imprisonment term was life.  The calculation of the Base Offense Level in this case was somewhat complicated.  Simply put, when there are multiple counts, the counts are grouped and the count with the highest offense level in the group is utilized.

The Probation Officer placed the three counts in one group and utilized the money laundering sentencing guideline, U.S.S.G. § 2S1.1, to calculate the base offense level because the money laundering count was the most serious of the counts comprising the group, that is the highest offense level of the counts in the group.  We were then to look at the underlying offense from which the laundered funds were derived.  In this case that required us (1) to use the drug quantity table in U.S.S.G. § 2D1.1(c) which sets an offense level of 36 if at least 500 grams but less than 1.5 kilograms of cocaine base were involved and (2) add 2-levels to that figure if the defendant possessed a firearm in connection with the drug conspiracy.  The Probation Officer concluded that at least 500 grams of crack cocaine and a firearm were involved in the offense and set the Base Offense Level at 38.  After setting the Base Offense Level at 38, the Probation Officer added two levels to that figure pursuant to U.S.S.G. § 2S1.1(b)(2)(b) because Figaro was convicted under the money laundering statute.  He then added 4

levels for Figaro's role as an organizer and leader and 2 levels for obstruction of justice, resulting in a Total Offense Level of 46. However, the highest offense level set forth in the Sentencing Table located in Chapter Five of the Sentencing Guidelines is 43. The Commentary to the Sentencing Table, Application Note 2, states in relevant part that "[a]n offense level of more than 43 is to be treated as an offense level of 43."

If the quantity of crack cocaine was at least 150 but less than 500 grams the drug quantity table with the adjustment for possessing a firearm in connection with the offense sets the Base Offense Level at 36.[1]

Figaro filed objections to the presentence report. The objections related primarily to (1) the type and quantity of drugs involved in the offense, (2) a 4-level upward adjustment in Figaro's offense level for his role in the offenses, and (3) a 2-level upward adjustment in Figaro's offense level for obstruction of justice. Figaro did not object to the 2-level upward adjustment for being convicted under the money laundering statute or the manner in which the Probation Officer grouped the counts. We also raised the issue of whether Figaro should receive a 2-level upward adjustment for using a minor in committing the

---

1. The Base Offense Level under the Sentencing Guidelines for an offense involving at least 50 grams of Cocaine Base but less than 150 grams with the upward adjustment for possessing a firearm is 34.

offense. The presentence report did not reflect such an adjustment.

After an evidentiary hearing held on August 13, 2003, we issued an opinion on September 16, 2003, finding that the total offense level was 46 (which was treated as an offense level of 43) and that the guideline imprisonment term was life.

In arriving at a guideline term of life imprisonment, we determined that Figaro was responsible for the distribution of at least 150 grams but less than 500 grams of crack cocaine resulting in a offense level of 34,[2] that he possessed a firearm during the commission of the offense which resulted in a 2-level upward adjustment, that a 2-level upward adjustment was warranted because he was convicted under the money laundering statute, that he was an organizer and leader of a criminal activity that involved 5 or more participants and was otherwise extensive which resulted in a 4-level upward adjustment, that he attempted to obstruct and impede the due administration of justice during the course of the prosecution and sentencing of the instant offense which resulted in a 2-level upward adjustment, and that he used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, apprehension for, the offense which resulted in a 2-level upward adjustment.

---

2. We specifically found that Figaro was responsible for the distribution of 447.35 grams of crack cocaine.

On September 25, 2003, we sentenced Figaro to a term of life imprisonment on each of Counts 1 and 2 and a term of 20 years on Count 3 to be served concurrently with each other.

On March 25, 2005, the Court of Appeals affirmed the judgment of conviction but remanded the case for resentencing in light of United States v. Booker, 125 S.Ct. 738 (Jan. 12, 2005).[3]

On March 29 and May 12, 2005, we issued orders which, inter alia, required the Government and Figaro to file sentencing briefs addressing the factors set forth in 18 U.S.C. § 3553(a). On May 31, 2005, Figaro filed a sentencing brief. On June 13, 2005, the Government filed a sentencing brief. A reply brief was filed by Figaro on June 20, 2005.

Figaro in his brief and reply brief appears to contend that the remedy provided in the Booker case cannot be applied to him because such application would violate ex post facto principles and consequently we must disregard the enhancements that were utilized to arrive at a guideline term of life imprisonment. We rejected that position in two prior cases. United States v. Sparks, 4:03-CR-362-01, slip op at 6-7 (M.D.Pa. May 19, 2005); United States v. Nugent, 4:04-CR-0119, slip op. at 3-6 (M.D.Pa. March 25, 2005).

In rejecting that position we relied on a case from the Court of Appeals for the 11th Circuit and one from the Southern District of West Virginia. See United States v. Duncan, 400 F.3d

---

3. The Court of Appeals found that Figaro's claims regarding trial errors were without merit.

1297, 1306-08 (11th Cir. 2005); United States v. Gray, 362 F.Supp.2d 714, 725-26 (S.D.W.Va. 2005).  Both of those cases held that no unfair change in the law occurred as a result of the remedial opinion issued in Booker and that the existence of the potential maximum set forth in the United States Code provided the defendant with adequate notice of the potential maximum sentence.

To violate due process and ex post facto principles, Figaro would have to be placed in a worse position, i.e., facing a more stringent sentence than he did before the legislative change or judicial ruling. It is clear that Figaro was always facing a mandatory minimum of 10 years and a statutory maximum of life imprisonment.  We will reject Figaro's ex post facto argument.

Also, Figaro in his reply brief raises an objection to his placement in criminal history category III.  In our opinion of September 16, 2003, we noted that "the issue of Figaro's criminal history category is a moot issue because with a total offense level of 43 no matter what criminal history category Figaro is placed in the sentencing guidelines call for a mandatory term of imprisonment of life."  In light of Booker the guideline term of life imprisonment is now advisory.  No matter what criminal history category Figaro is placed in there is an advisory guideline term of life imprisonment.

Figaro is scheduled to be resentenced on June 27, 2005, at 4:00 p.m.  As we noted in our order of March 29, 2005, the

<u>Booker</u> case made the Sentencing Guidelines advisory and requires the court to take into consideration all of the factors set forth in 18 U.S.C. § 3553(a) in arriving at a reasonable sentence. Under the old system we were required to impose a sentence of life imprisonment.  Under the new system the advisory guideline term of life imprisonment is only one of the factors which the court is to consider.

      NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

      1.  Figaro's ex post facto objection to the application of the guideline enhancements is overruled.

      2.  Figaro's objection to placement in criminal history category III is overruled.

s/Malcolm Muir
_____
MUIR, U.S. District Judge

MM:gs